Zimmerman, J.
 

 A construction of the contract of reinsurance is the first and most important matter arising in a decision of these cases. The pertinent provisions of the contract are as follows:
 

 “Section I. The reinsurer [Excess Insurance Company] agrees to reinsure the company [Central Mutual Insurance Company] as respects all third party automobile public liability policies * * * except those hereinafter excluded, becoming effective while this contract is in force and agrees to repay any amounts of ultimate net loss which the company may pay in excess of the first five thousand dollars ($5,000) on account of any one person injured or killed and the first ten thousand dollars ($10,000) on account of more than one person injured or killed in any one accident; but the .liability of the reinsurer shall not exceed one hundred forty-five thousand dollars ($145,000) on account of one person injured or killed nor two hundred forty thousand dollars ($240,000) for two or more persons injured or killed in any one accident.
 

 “Section II. The term ‘ultimate net loss’ shall be understood to mean and shall mean the sum actually paid in cash in settlement of losses for which the company is liable, after making proper deductions *
 
 *
 
 *.
 

 “Section III. The liability of the reinsurer shall commence simultaneously with that of the company and shall be subject in all respects to all the general and special stipulations, clauses, waivers and modifications of the original policy or other undertaking and any endorsements or riders thereon.”
 

 It is the position of the Stickels that this reinsurance agreement constitutes a contract against liability of which they are entitled to take advantage; that the liability of the reinsurer to pay is not dependent upon prior payment of a loss by the reinsured, and
 
 *52
 
 that the insolvency of the reinsured does not affect the reinsurer’s obligation. Reliance is placed on the case of
 
 Allemannia Fire Ins. Co.
 
 v.
 
 Firemen’s Ins. Co. to use of Wolfe, Recr.,
 
 209 U. S., 326, 52 L. Ed., 815, 28 S. Ct., 544, 14 Ann. Cas., 948, which involved liability under a reinsurance contract, and was brought by the receiver of the insolvent reinsured company ag'ainst the reinsurer. The court held the contract in issue established the duty of the reinsurer to pay losses as specified, for which the reinsured was primarily liable, independent of previous payments thereof by the reinsured.
 

 In opposition to the contentions of the Stickels, the Excess Insurance Company maintains that the reinsurance agreement as phrased constitutes a contract of indemnity against loss, making the actual payment of a loss in cash by the reinsured a condition precedent to the liability of the reinsurer to respond, and that the Stickels have no rights in connection with such contract. The Excess Insurance Company cites and relies on the case of
 
 Fidelity & Deposit Co. of Maryland
 
 v.
 
 Pink, Supt. of Ins.,
 
 302 U. S., 224, 82 L. Ed., 213, 58 S. Ct., 162.
 

 “Reinsurance” may be defined generally as a contract whereby one for a consideration agrees to indemnify another wholly or partially against loss or liability by reason of a risk the latter has assumed under a separate and distinct contract as insurer of a third party. 1 Couch’s Cyclopedia of Insurance Law, 65, Section 44. See, also,
 
 Commercial Mutl. Ins. Co.
 
 v.
 
 Detroit Fire & Marine Ins. Co.,
 
 38 Ohio St., 11, 15, 43 Am. Rep., 413, 414.
 

 It has long been an established rule that contracts of insurance should be construed like other contracts, so as to give effect to the intention as expressed by the language of the parties.
 
 West
 
 v.
 
 Citizens’ Ins. Co.,
 
 27 Ohio St., 1, 22 Am. Rep., 294;
 
 Travelers’ Ins. Co.
 
 v.
 
 Myers & Co.,
 
 62 Ohio St., 529, 57 N. E., 458, 49 L. R. A.,
 
 *53
 
 760. And a court cannot extend or enlarge the contract by implication so as to embrace an object distinct from that originally contemplated.
 
 Fidelity & Casualty Co. of New York
 
 v.
 
 Hartzell Bros. Co.,
 
 109 Ohio St., 566, 569, 143 N. E., 137, 138.
 

 It is equally well settled that all provisions of a contract must be construed together in determining the meaning and intention of any particular clause or provision thereof.
 
 Legler, Admr.,
 
 v.
 
 United States Fidelity & Guaranty Co.,
 
 88 Ohio St., 336, 103 N. E., 897.
 

 As we read Sections I and II of the contract under consideration, in the light of the above rules, they say that the Excess Insurance Company agrees to re-insure the Central Mutual Insurance Company as respects third party automobile public liability policies and in this manner: By
 
 repaying
 
 any amounts of
 
 ultimate net Voss, i. e.,
 
 the sums actually paid in cash in settlement of losses, which the Central Mutual may
 
 pay
 
 in excess of stated amounts under specified conditions.
 

 Indemnification for loss
 
 is thus clearly stated, and actual payment in cash of a loss by the Central Mutual Insurance Company for which it is liable is a condition precedent to the duty of the reinsurer to pay.
 

 It is to be borne in mind that the contract here involved is one between two insurance companies, as reinsurer and reinsured, respectively, and that the provisions of Section 9510-3, General Code, pertaining to an original contract of insurance, do not apply.
 

 As between the
 
 Allemannia
 
 and
 
 Pink cases, supra,
 
 our opinion is that the latter is more applicable. In distinguishing the
 
 Allemannia case,
 
 it holds that the liability of a reinsurer is to be determined by the terms of the particular reinsurance contract; and when such contract provides that the reinsurer is not to become liable except upon actual payment of a loss by the re-insured, no liability occurs until the reinsured has in
 
 *54
 
 fact paid. Under a policy so worded, the insolvency of the reinsured is a matter of no moment.
 

 It would seem superfluous to cite additional authorities for, after all, the decisions turn largely upon the language of the particular contract under examination in the particular case.
 

 In further support of their contention that the reinsurance contract is one against liability, the Stickels place emphasis on Section III thereof. However, the interpretation of such section must be undertaken with Sections I and II as a background, and with due regard for the fact that we are dealing with an engagement between two insurance companies exclusively. When this is done the contention fails.
 

 As has been observed, Sections I and II constitute an agreement of indemnity for loss. The query then suggests itself: When does the obligation as to such indemnity begin? Section III contains the answer. By its terms, the liability to indemnify for loss commences at the instant the reinsured incurs liability under the original policy. In other words, by virtue of Section III, the liability'of the reinsurer “to repay any amounts of ultimate net loss” begins simultaneously with the liability of the reinsured on its original policy, although the reinsurer cannot be called upon to part with its money until the reinsured has in reality paid a loss.
 

 For illustration, original claims in the amounts contemplated by the contract of reinsurance are not usually satisfied at once. Negotiations and frequently litigation precede payment, often resulting in considerable delay. If the obligation of the reinsurer to “repay” were not definitely fixed as to time, cancellation or expiration of the contract would enable it to escape as to claims which arose during the life of the contract but were paid by the reinsured subsequent to its termination.
 

 The language, liability “shall be subject in all re
 
 *55
 
 spects to all the general and special stipulations, clauses, waivers and modifications of the original, policy,” etc., as used in Section III, does not mean that the original policy is to be incorporated into and made a part of the reinsurance contract, but that the stipulations, etc., referred to shall be taken into account as they may affect the liability of the reinsurer to the reinsured. The “ultimate net loss” which the reinsurer is required to pay is only “the sum actually paid in cash in settlement of losses for which the company [reinsured]
 
 is
 
 liable.”
 

 Were the reinsurance contract to be interpreted as urged by the Stickels, their right of action in 'connection with it is at least questionable. In the case of
 
 Commercial Mutl. Ins. Co.
 
 v.
 
 Detroit F. & M. Ins. Co., supra
 
 (38 Ohio St., 11, 18, 43 Am. Rep., 413, 416), the following statement is approved:
 

 “The reinsurance is absolutely foreign to the original assured, with whom the reinsurer contracts
 
 no sort of obligation.”
 

 Here we have an undertaking running solely to the reinsured, the Central Mutual Insurance Company. The Stickels were not parties to the contract, had nothing to do with securing it, and bear no contractual relationship whatsoever to the reinsurer. Privity is entirely absent, and in these circumstances it has generally been held that no right of action legal or equitable exists against the reinsurer in favor of a creditor of the reinsured, under an original policy of insurance.
 
 Morris & Co.
 
 v.
 
 Skandinavia Ins. Co.,
 
 279 U. S., 405, 73 L. Ed., 762, 49 S. Ct., 360;
 
 Greenman
 
 v.
 
 General Reinsurance Corp.,
 
 237 App. Div., 648, 262 N. Y. Supp., 569 (affirmed, 262 N. Y., 701, 188 N. E., 128); 22 Ohio Jurisprudence, 924, Section 835; 8 Couch’s Cyclopedia of Insurance Law, 6794, Section 2098; 35 A. L. R., 1348, annotation; 103 A. L. R., 1485, annotation.
 

 The Stickels also claim the benefit of the reinsurance contract by virtue of Section 614-99, General
 
 *56
 
 Code, requiring motor transportation companies to file a public liability insurance policy adequately protecting tbe interests of the public as a prerequisite to the issuance of a certificate of convenience and necessity by the Public Utilities Commission.
 

 This section obviously has reference to a policy of the type delivered by the Central Mutual Insurance Company to Erie Motor Freight, Inc. It cannot be extended or enlarged to include a policy of reinsurance, which is an entirely different sort of instrument.
 

 No error appearing in the judgments of the Court of Appeals, they are affirmed.
 

 Judgments affirmed.
 

 Williams, Matthias and Hart, JJ., concur.
 

 Weygandt, C. J., and Day, J., dissent.