INTERNATIONAL SURPLUS LINES
INSURANCE COMPANY,
Plaintiff,

v.

CERTAIN UNDERWRITERS AND UNDERWRITING SYNDICATES AT LLOYD'S OF LONDON, subscribing to Lloyd's Policy Nos. 614/NC 8097; 614/NC 8098; 614/NC 8100; 614/NC 8101; 614/NTA 208; 614/NTA 209; 614/NTA 210; 614/NTA 211; 614/NTA 662; 614/NTA 663; 614/NTA 664; 614/NTA 665; 614/NTB 086; 614/NTB 087; 614/NTB 088; 614/NTB 089; et al., Defendants.

No. C2–92–829.

United States District Court,
S.D. Ohio,
Eastern Division.

March 22, 1994.

Michael Proctor Graney, Simpson Thacher & Bartlett, Columbus, OH, for plaintiff.

Mark E. Defossez, Reminger, Reminger, Hunter & Enders, Columbus, OH, Wendy B. Millman, Mendes & Mount, Leonard A. Sheft, Sheft & Sheft, New York City, for defendants.

Douglas Michael Kennedy, Roetzel & Andress, Columbus, OH, Gerald A. Greenberger, Sheft & Sheft, Jersey City, NJ, for Lexington Ins. Co., Union Atlantique D'Assurances, S.A.

## MEMORANDUM AND ORDER

BECKWITH, District Judge.

This is a diversity action in which the Plaintiff seeks a declaratory judgment with respect to various reinsurance contracts. The Plaintiff is an insurance company that issued to Owens–Corning Fiberglass excess liability insurance policies providing a total of $410 million in coverage. The Plaintiff contends that approximately $255 million of this amount was reinsured by the Plaintiff with the Defendant Reinsurers.

The Plaintiff apparently is seeking over $250 million against the Defendant Reinsurers. The Defendant Reinsurers each allegedly participated in one or more reinsurance contracts with the Plaintiff in connection with certain insurance policies issued by the Plaintiff to Owens–Corning Fiberglass Corp. The Plaintiff contends as of June of 1993, it had paid over $200 million to Owens–Corning Fiberglass Corp. and that it has billed the Reinsurers for their share of these losses in the amount of $73 million. The Plaintiff asserts that the Defendant Reinsurers have refused to pay any portion of these losses.

This matter is currently before the Court to consider several motions by the parties. This Court will first consider the various motions by the Defendants to reconsider this Court's Opinion and Order of May 4, 1993 (the "May 4th Order"). Motions to reconsider were filed by Defendants Jeremy Guy Nelson ("Nelson"), Certain London Market Insurance Companies ("London Market Reinsurers"), and Defendant Lexington Insurance Company ("Lexington"). In their motions, the Defendant Reinsurers have moved the Court pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure for reconsideration of the May 4th Order.

The Court notes that Rule 60(b) provides, in pertinent part that:

[o]n motion and upon such terms as are just, the court may relieve a party ... from a *final* judgment, order or proceeding for the following reasons: ... (6) any other reason justifying relief from the op-

eration of the judgment. (emphasis added).

The Court agrees with the Plaintiff that Rule 60(b) is limited by its terms to "final" judgments and is thus, inapplicable to the May 4th Order in this case. *See Mallory v. Eyrich*, 922 F.2d 1273, 1277 (6th Cir.1991). Moreover, the Court notes that the Sixth Circuit Court of Appeals has recently determined that the May 4th Order is not a final judgment.

In addition to moving this Court to reconsider its May 4th Order, Lexington and London Market Reinsurers filed separate notices of appeal of the May 4th Order to the Sixth Circuit Court of Appeals. On October 1, 1993, pursuant to the Plaintiff's motion to dismiss, the Sixth Circuit Court of Appeals dismissed both of the appeals for a lack of appellate jurisdiction. In a decision by Judges Milburn, Guy, and Contie, the Sixth Circuit stated that the "order at issue in this case did not terminate the litigation and was not final for purposes of § 1291." The Sixth Circuit also found that the May 4th Order did not come within the small class of decisions exempted from the final judgment rule by *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949). Accordingly, this Court finds that it possesses no authority to reconsider its May 4th Order under Rule 60(b). Accordingly, this Court **DENIES** the Defendants' motions to reconsider the May 4th Order pursuant to Rule 60(b).

Alternatively, this Court possesses the inherent authority to review and reconsider its orders during the pendency of a case and thus, will consider the Defendants' objections to the Court's May 4th Order. In the May 4th Order, this Court held that Ohio Revised Code § 3901.18(A)(1) is applicable to this action notwithstanding the fact that personal jurisdiction over the Defendants was not obtained under Ohio Revised Code § 3901.17.[1] The Court additionally granted the Plaintiff's motion to strike the Defendants' answers for failure to post pre-answer security as dictated by Section 3901.18. The

Court notes that Section 3901.18 provides, in pertinent part:

(A) Before any unauthorized foreign or alien insurer may enter an appearance in any court action, ·..., such unauthorized insurer shall:

(1) Deposit with the clerk of the court in which such action ... is pending ... cash or securities or file with such clerk ... a bond with good and sufficient sureties, to be approved by the court, ... in an amount to be fixed by the court sufficient to secure the payment of any final judgment which may be rendered in any such court action;

(2) Procure a certificate of authority to transact the business of insurance in this state.

In support of their motions, the Defendants contend that a recent ruling by an Ohio appellate court has clarified Ohio law with respect to the applicability of Section 3901.18, relying upon *Intergy, Inc. v. Carrigan*, 1993 WL 127089, 1993 Ohio App. Lexis 2150 (Cuyahoga Cty.App.1993). In *Intergy*, the Court of Appeals of Cuyahoga County upheld the trial court's finding which denied the plaintiff's motion to compel compliance with Section 3901.18. In *Intergy*, Judge Ann Dyke wrote:

R.C. 3901.18 is a long arm statute, written to ensure the accessibility of foreign insurers to being sued in jurisdictions where they do business. The foreign insurers in this case, UASC, Carrigan and United American Contractors Association, were served and represented in this suit. The trial court correctly denied Intergy's motion to compel compliance with 3901.18, as it is inapplicable to the defendants in this case.

The Defendants assert that the *Intergy* decision supports their position that Section 3901.18 applies only when personal jurisdiction over the foreign insurer is acquired through the operation of Section 3901.17. This Court, however, agrees with the Plaintiff that the *Intergy* decision does not sup-

---

1. The contracts at issue is this case contain a "service of suit clause" in which each of the subscribing reinsurers agrees to submit to the personal jurisdiction of the court in which the reinsured commences an action on the contract.

port the Defendants' position. The Court notes first that the *Intergy* court incorrectly refers to Section 3901.18 as a long arm statute while Section 3901.17 is actually the long arm statute. Also, the Court notes that the *Intergy* court does not even refer to Section 3901.17, and thus, the *Intergy* decision can hardly be said to stand for the proposition that Sections 3901.17 and 3901.18 are interdependent. Moreover, since the *Intergy* court did not explain why Section 3901.18 was inapplicable to the defendants in the *Intergy* case, the *Intergy* decision does not provide this Court with any guidance on this issue relevant to the circumstances present in this case. Thus, the Court agrees with the Plaintiff that *Intergy* decision does not support the Defendants' position.

Additionally, in support of their position, the Defendants have presented the Court with the records of proceedings of the National Association of Insurance Commissioners' ("NAIC") Committee on Unauthorized Insurance. In response, the Plaintiff argues that the notes of the NAIC proceedings are not newly available and are of no historical interest. The Plaintiff asserts that the statutory language is clear and that it is· thus inappropriate to refer to extrinsic materials to interpret Section 3901.18. The Court agrees with the Plaintiff that Section 3901.18 unambiguously provides that it shall be applied in "any court action, suit, or proceeding ..." Additionally, the Court has not found anything within the NAIC materials which supports the Defendants' theory that Section 3901.18 is not applied where personal jurisdiction is not obtained through Section 3901.17. Accordingly, the Court hereby DENIES the Defendants' motion to reconsider its Order of May 4, 1993.

Additionally, in its Order of May 4, 1993, this Court directed the parties to file memoranda with respect to the amount of security required pursuant to Section 3901.18(A)(1). The Court has received several memoranda from the parties addressing this issue. First, the Plaintiff contends that Defendant Reinsurers should collectively post security in the amount of $258,452,639.14 which would include pre-judgment interest. The Plaintiff

has arrived at this figure through the following calculation:

(1) the amounts billed by the Plaintiff to the Reinsurers to date (*i.e.,* $72,707,-635.70);

(2) pre-judgment interest accrued through June 7, 1993 on amounts billed to the Reinsurers at the Ohio statutory interest rate of 10% per annum (*i.e.,* $3,526,414.14); and

(3) the amount to be billed under the reinsurance contracts based upon the future consumption of the remaining coverage provided by the Plaintiff's policies (*i.e.,* $182,218,589.30).

The Plaintiff has provided an Exhibit to the Court in which the specific amount to be posted by each Defendant is set forth based upon each Defendant's participating share under the reinsurance contract at interest.

■ In their memoranda, Nelson and the London Market Reinsurers argue that they should not be required to post any pre-answer security because of the existence of the Lloyd's American Trust Funds. As explained in an affidavit submitted by these Defendants, Lloyd's of London is an insurance marketplace at which Underwriters engage in the business of insurance. Pursuant to British law, each Lloyd's Underwriter is required to pay premiums into a Premium Trust Fund. Additionally, Lloyd's Underwriters have created supplemental trust funds called "Lloyd's American Trust Funds." The assets of the supplemental trust funds are held in the United States by Citibank, N.A. in New York City. As of December 31, 1992, the aggregate value of the Lloyd's American Trust Funds was over $8 billion dollars. Under the relevant Trust Fund Deed, the assets of the Lloyd's American Trust Funds are held for the benefit of all policyholders to whom an individual Lloyd's Underwriter is liable in the United States. These Defendants thus assert that the existence of these trust funds removes any doubt regarding the availability of funds to satisfy any potential judgment against these Defendants.

■ The Plaintiff, however, contends that the existence of the Lloyd's Trust does not

excuse the Lloyd's Defendants from posting a bond. The Plaintiff asserts that the language of Section 3901.18(A)(1) is plain, as it provides that an unauthorized foreign insurer is required to "deposit with the clerk of the court ... cash or securities or file with such clerk or the superintendent a bond ..." The Plaintiff also asserts that Section 3901.18 does not contain any exemptions for entities which can demonstrate their ability to satisfy judgments from assets located outside of Ohio and does not contain any exemptions for trusts maintained by Lloyd's or any other entity. The Court agrees with the Plaintiff that the aim of Section 3901.18 is to place in the Court's custody assets sufficient to satisfy any judgment rendered in order to facilitate a plaintiff's ability to enforce a judgment. Accordingly, the Court finds that the existence of the Lloyd's trust does not excuse the Lloyd's Defendants from posting a bond.

Additionally, three of the London Market Reinsurers contend that they are instrumentalities of foreign states and thus, immune from the imposition of pre-answer security requirements of Section 3901.18 through the operation of Section 1609 of the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. 1602 *et seq.* The Plaintiff agrees that two of these three Defendants are immune from the reach of Ohio's bond-posting provisions. Thus, the Court finds that Banco de Seguros Del Estado and Instituto Nacional de Reaseguros have submitted sufficient evidence to establish their status as foreign sovereigns pursuant to the FSIA.

The Plaintiff, however, contends that Instituto Resseguros de Brazil ("IRB") has not met its burden of proving that it is an entity protected by the FSIA. Under Section 1603(b) of the FSIA, an entity may be treated as a "foreign state" when it has demonstrated that it is:

(1) ... a separate legal person, corporate or otherwise,

(2) ... an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and

(3) ... is neither a citizen of a State of the United States as defined in section 1332(c)

and (d) of this title, nor created under the laws of any third country.

The Plaintiff agrees that IRB has set forth evidence in the form of an affidavit that appears to meet the requirements of Section 1603(b)(1) and (3). The Plaintiff, however, contends that IRB has failed to establish that it is an "organ" of the government of Brazil or corporation in which the government of Brazil holds a majority interest, as required by Section 1603(b)(2). The Court notes that when IRB previously tried to establish FSIA immunity in New York Supreme Court, the court found that a declaration that was identical to the one filed by IRB in this case was insufficient to establish that IRB is effectively controlled by the Brazilian government such that it is immune from the reach of a bond-posting statute. *See Wright v. Aegon Reinsurance Co. of Am.,* No. 22313/91–001, slip op. at 10 (Sup.Ct.N.Y. June 22, 1992). Accordingly, this Court finds that, in view of the evidence presently before the Court, IRB has not satisfied the requirements of FSIA that it is immune from the reach of a bond-posting statute.

 In its memorandum, Lexington argues that Section 3901.18 does not require Lexington to post any pre-answer security since it would not owe money damages to the Plaintiff even if the Plaintiff prevailed in this action. Nelson and the London Market Reinsurers also argue that they owe no money under the reinsurance contracts at issue and thus, are not required to post any pre-answer security pursuant to Section 3901.18 and that other London Market Reinsurers should only post pre-answer security that reflects the Reinsurers' share of billings submitted to date. Additionally, Defendant Union Atlantique de Reassurances, S.A. ("UNAT") has filed a memorandum in which it argues that it will have no liability until after the Plaintiff has paid a loss reinsured by UNAT.

In view of the authority presented by the Defendants on this issue, the Court finds that it agrees in part with the Defendants on this issue. The Court previously recognized that Ohio's bond-posting requirement applies in this case because the Plaintiff in its com-

plaint had requested "such other and further relief as this Court may deem just and proper." The Court thus does not agree with the Defendants that they are not required to post bond in this case since the Plaintiff is seeking only a declaratory judgment.

■ However, the Court agrees with the Defendants that reinsurance contracts are contracts of indemnity in which the liability of the reinsurer only arises after the losses are paid. *See Stickel v. Excess Ins. Co. of America,* 136 Ohio St. 49, 23 N.E.2d 839 (1939). As the Supreme Court of Ohio stated in *Stickel,* "the reinsurer cannot be called upon to part with its money until the reinsured has in reality paid a loss." 23 N.E.2d at 842. Accordingly, the Court finds that the Defendants in this action are required to post a bond pursuant to Section 3901.18 only to the extent that such losses have been billed and paid by the Plaintiff and only to the extent that the Plaintiff provides the Court with evidence in support of the above. *See Morgan v. American Risk Management, Inc.,* Docket No. 89 Civ. 2999, 1990 WL 106837 (S.D.N.Y.1990), 1 *Mealey's Reins. Rep.,* 1990 WL 106837, No. 6–C, 1990 U.S.Dist. LEXIS 9037.

In view of the preceding discussion, the Court hereby **DIRECTS** the Plaintiff to provide the Court with a memorandum discussing the amount of security to be posted and supporting evidence within twenty days from the date of this Order. If the any of the Defendants wish to respond to the Plaintiff's memorandum, they must respond within fifteen days of their receipt of the Plaintiff's memorandum. The Court also notes that Defendant UNAT argues in its memorandum that such security should be limited to ten percent of UNAT's limit of liability under the reinsurance contract in issue. UNAT contends that posting a bond or letter of credit for 10% of its limit of liability under the reinsurance agreement in dispute is good and sufficient security to assure UNAT's continued participation in this action as well as to secure any resulting judgment. The Court would be willing to entertain any discussion on UNAT's ten percent position in connection with the requirements of Section 3901.18 in the memoranda submitted by the parties.

Also, on August 13, 1993, London Market Reinsurers and Lexington Insurance Company filed Objections to the Order of Magistrate Judge Norah King of July 22, 1993. Additionally, on August 13, 1993, Jeremy Guy and Certain London Market Companies filed Objections to the Order of Magistrate Judge King of July 22, 1993. The Plaintiff has replied to the Objections, and the Defendants have filed a reply memorandum in support of their Objections. In her Order of July 22, 1993, Magistrate Judge King found that the Defendants had failed to pursue discovery diligently and that additional discovery was unnecessary. The Defendants have made several objections to Magistrate Judge King's order.

■ When ruling on a reconsideration of a Magistrate Judge's order, the Magistrate Judge's order must be sustained unless the findings are clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A) provides:

A judge may designate a magistrate to hear and determine any pretrial matter pending before the court.... A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

Pretrial orders of a Magistrate Judge are thus reviewable only under the "clearly erroneous and contrary to law" standard, and are not subject to a *de novo* determination, as are a magistrate judge's proposed findings and recommendations under Section 636(b)(1)(B). *Merritt v. International Brotherhood of Boilermakers,* 649 F.2d 1013 (5th Cir.1981).

Pursuant to 28 U.S.C. § 636, this Court may reconsider any pretrial matter, such as Magistrate Judge King's Order of July 22, 1993, where the parties have shown that the magistrate judge's order is "clearly erroneous or contrary to law." In this case, the Court finds that London Market Reinsurers and Lexington Insurance Company have failed to demonstrate that the Order of Magistrate Judge Norah King of July 22, 1993 is clearly erroneous or contrary to law. Accordingly, the Court hereby **OVERRULES** the Objections of August 13, 1993 by London

Market Reinsurers and Lexington Insurance Company to the Order of Magistrate Judge King of July 22, 1993. Additionally, the Court hereby **OVERRULES** the Objections of August 13, 1993 by Jeremy Guy and Certain Underwriters. As the Objections were thoroughly briefed by the parties, the Court also **DENIES** the Defendants' request for oral argument on their Objections.

Additionally, on October 29, 1993, Defendants Lexington Insurance Company and Union Atlantique de Reassurances ("UNAT") filed Objections to the Order of Magistrate Judge King dated October 19, 1993. In her Order of October 19th, Magistrate Judge King held (1) that no general discovery in this action may be conducted prior to February 1, 1994, and (2) that the Plaintiff may file a motion for partial summary judgment with respect to the above issue no later than November 15, 1993. In their Objections, Lexington and UNAT contend that these rulings are clearly erroneous and contrary to law since there is no legal or factual basis for delaying general discovery for over 16 months, and any motion for summary judgment should be deferred because the evidence presented by Lexington and UNAT demonstrates that the "single-occurrence issue" cannot be clearly separated from the other issues in this action, for ·which there has been no discovery pursuant to Court order. On November 1, 1993, Defendants Jeremy Guy Nelson and Certain London Market Companies filed their notice of joinder in the Objections. The Plaintiff has filed a response to the Objections, and Defendants Lexington and UNAT have filed a reply memorandum in support of their Objections.

In her Order of January 8, 1993, Magistrate Judge King held that the issue of whether the underlying claims constitute a single occurrence or multiple occurrences will be bifurcated for prompt resolution and that only that discovery necessary to the resolution of this issue may proceed. The Court agrees with the Plaintiff that Magistrate Judge's Order of October 29, 1993 does nothing more than set new deadlines for achieving the Order of January 8, 1993. Additionally, the Court finds that it will consider the issue of the ripeness of the summary judgment motion in the context of ruling on the Plaintiff's summary judgment motion following the parties full briefing on that motion.

As the Defendants have not demonstrated that the Order of October 19 is clearly erroneous or contrary to law and in view of the thorough analysis provided by the Plaintiff, the Court hereby **OVERRULES** the Objections of October 29, 1993 to the Order of Magistrate Judge King of October 19, 1993.

### Conclusion

In view of the preceding and in view of the analysis provided by the Plaintiff in its memoranda, the Court hereby **DENIES** the motion filed by Defendants Jeremy Guy Nelson and Certain London Market Company on June 2, 1993, to reconsider its Order of May 4, 1994, and **DENIES** the motion filed by Defendant Lexington Insurance Company on June 3, 1993, to reconsider its Order of May 4, 1993. Since the issues were thoroughly addressed in the memoranda provided to the Court, the Court also **DENIES** the Defendants' requests for oral argument on these motions. In view of the preceding discussion on the amount of security to be posted by certain Defendants in this action pursuant to Section 3901.18, the Court hereby **DIRECTS** the Plaintiff to provide the Court with a memorandum discussing the amount of security to be posted and supporting evidence within twenty days from the date of this Order. If the any of the Defendants wish to respond to the Plaintiff's memorandum, they must respond within fifteen days of their receipt of the Plaintiff's memorandum.

Also, the Court hereby **OVERRULES** the Objections of August 13, 1993 by London Market Reinsurers and Lexington Insurance Company to the Order of Magistrate Judge King of July 22, 1993. Additionally, the Court hereby **OVERRULES** the Objections of August 13, 1993 by Jeremy Guy and Certain London Market Companies to the Order of Magistrate Judge King of July 22, 1993. Also, the Court hereby **OVERRULES** the Objections of October 29, 1993 by Lexington Insurance Company and Union Atlantique de

Reassurances, S.A. to the Order of Magistrate Judge King of October 19, 1993.

**IT IS SO ORDERED.**