OPINION
{¶ 1} Plaintiff-appellant, Debra Riddle, appeals a decision of the Madison County Court of Common Pleas granting summary judgment in favor of defendant-appellee, Liberty Mutual Insurance Company ("Liberty"), on the ground that United Parcel Service of America, Inc. ("UPSA"), the parent company of appellant's employer, United Parcel Service, Inc. ("UPS"), was a self-insurer in the practical sense, and was therefore exempt from providing uninsured/underinsured motorist ("UM/UIM") coverage to appellant under R.C. 3937.18.[1]
 {¶ 2} In September 1999, appellant was injured while riding as a passenger on a motorcycle owned and operated by Roscoe Wiegand, an uninsured motorist. At the time of the accident, although employed by UPS, appellant was not in the scope of her employment, nor was she a passenger in a vehicle owned by UPS. Both UPS and UPSA were named insureds under a Business Automobile Policy (the "BA policy") issued by Liberty. The BA policy had liability limits of $5 million and no deductible. There was no indemnity agreement incorporated in the policy requiring UPSA to reimburse Liberty for any claims paid by Liberty. The BA policy did not provide for UM/UIM coverage in the state of Ohio. Because Ohio allowed an insured to reject UM/UIM coverage, UPSA rejected such coverage both in 1998 and 1999. The rejection forms for 1998 and 1999 both listed UM/UIM limits of coverage ranging from $50,000 to $1 million.
 {¶ 3} The BA policy was subject to a reinsurance agreement between Liberty and UPINSCO, Inc., a wholly-owned subsidiary of UPSA. UPINSCO is "an insurance company in the business of insurance." The ceding company was Liberty and the reinsurer was UPINSCO. Under the BA policy, UPSA paid a premium to Liberty. In return, Liberty paid all losses directly to the claimants. Under the reinsurance agreement, Liberty ceded 98 percent of the premium to UPINSCO. In return, UPINSCO agreed to indemnify Liberty for amounts paid by Liberty under the BA policy. Specifically, the reinsurance agreement required UPINSCO to reimburse Liberty for all paid claims and losses, including medical losses, as well as "for punitive, exemplary or extra-contractual damages whenever the ultimate loss include[d] such damages." The agreement also required UPINSCO to reimburse Liberty for attorney fees, court costs, and expenses incurred by Liberty in seeking recovery from a third party.
 {¶ 4} Article IV of the reinsurance agreement provided that "[t]he Reinsurer shall at the inception of this Agreement provide funding to [Liberty] for reserves for unpaid losses * * * by providing [Liberty] with a clean, irrevocable, and unconditional Letter of Credit, issued by a bank acceptable to [Liberty], to cover the sum of all such Reserves[.]" Article IV further provided that "[t]he Reinsurer and [Liberty] agree that the Letter of Credit provided by the Reinsurer pursuant to this Agreement may be drawn upon at any time, notwithstanding any other provisions in this Agreement, and shall be utilized by [Liberty] or its successors in interest * * * (ii) to reimburse [Liberty] for the Reinsurer's share of losses paid by [Liberty] under the terms and provisions of the policies reinsured under this Agreement, * * * [and] (iv) to pay any other amounts [Liberty] claims are due under this Agreement."
 {¶ 5} In September 2001, appellant filed a complaint seeking UM benefit from Liberty under the BA policy and pursuant to the Ohio Supreme Court decision in Scott-Pontzer v. Liberty Mut. Fire Ins. Co.,85 Ohio St.3d 660, 1999-Ohio-292. In July 2002, appellant filed a motion for partial summary judgment on the ground that UPSA's rejection of UM/UIM coverage was void as a matter of law. Liberty filed a memorandum contra and moved for summary judgment. Asserting that the BA policy was a fronting agreement,[2] Liberty first argued that under the BA policy and the reinsurance agreement, UPSA was a self-insurer in the practical sense as defined in Grange Mut. Cas. Co. v. Refiners Transport Terminal Corp. (1986), 21 Ohio St.3d 47, and therefore exempt from providing UM/UIM coverage under R.C. 3937.18. Liberty next argued that even if R.C. 3937.18 applied, UPSA had validly rejected UM/UIM coverage. Finally, Liberty argued that Georgia or Massachusetts law, not Ohio law, applied to define who was an insured under the BA policy, and that under either Georgia or Massachusetts law, appellant was not an insured.
 {¶ 6} On November 13, 2002, the trial court granted summary judgment to Liberty. The trial court found that based upon the BA policy, the reinsurance agreement, and the irrevocable letter of credit insulating Liberty, UPSA was a self-insurer in the practical sense, and therefore was not required to offer UM/UIM coverage under R.C. 3937.18. Addressing appellant's argument that such coverage was nevertheless offered and improperly rejected, the trial court found that UPSA effectively waived UM/UIM coverage. The trial court further found that the Ohio Supreme Court's decision in Linko v. Indemn. Ins. Co. of N.Am., 90 Ohio St.3d 445, 2000-Ohio-92, did not apply to the 1998 and 1999 rejection forms.[3] The trial court did not address whether Georgia or Massachusetts law applied. Its decision, however, is clearly and solely based upon Ohio law. This appeal follows in which appellant raises four assignments of error.
 {¶ 7} Under her four assignments of error, appellant argues that the trial court erroneously granted summary judgment in favor of Liberty for the following reasons: (1) the BA policy is not a fronting agreement and UPSA is not a self-insurer in the practical sense, therefore R.C.3937.18 applies to UPSA; (2) UPSA's rejection of UM/UIM coverage was invalid because it failed to list a premium for UM coverage equal to the $5 million liability limits; as a result, the trial court should have held that UM coverage arose by operation of law; and (3) the trial court erred by finding that Linko did not apply.
 {¶ 8} Civ.R. 56(C) provides in part that summary judgment shall be rendered where (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to only one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor. Harless v. Willis Day Warehousing Co. (1978), 54 Ohio St.2d 64,66.
 {¶ 9} An appellate court's standard of review on appeal from a summary judgment is de novo. Burgess v. Tackas (1998), 125 Ohio App.3d 294,296. An appellate court reviews a trial court's disposition of a summary judgment independently and without deference to the trial court's judgment. Id. In reviewing a summary judgment disposition, an appellate court applies the same standard as that applied by the trial court.Midwest Ford, Inc. v. C.T. Taylor Co. (1997), 118 Ohio App.3d 798, 800.
 {¶ 10} Because it attacks the underlying premise of appellant's appeal, that is, that Ohio law and Scott-Pontzer apply to this case, we first address whether Ohio, Georgia, or Massachusetts law applies. A trial court's choice of law is subject to a de novo review. See Callisv. Zilba (2000), 136 Ohio App.3d 696.
 {¶ 11} An insurance policy is a contract, and the relationship between the insured and the insurer is purely contractual in nature.Nationwide Mut. Ins. Co. v. Marsh (1984), 15 Ohio St.3d 107, 109. Accordingly, an action by an insured against his or her insurance carrier for payment of UM/UIM benefits is a cause of action sounding in contract, rather than tort, even though it may be tortious conduct that gives rise to the claim. Ohayon v. Safeco Ins. Co. of Illinois,91 Ohio St.3d 474, 2001-Ohio-100, paragraph one of the syllabus.
 {¶ 12} Where, as here, there is no express choice of law made by the parties, "[q]uestions involving the nature and extent of the parties' rights and duties under an insurance contract's [UIM] provisions," and the choice-of-law issue are resolved by applying Section 188 of the Restatement of the Law 2d, Conflict of Laws (1971). Id. at paragraph two of the syllabus. Section 188(1) provides that the parties' rights and duties under a contract are "determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties[.]" Restatement at 575. To assist in making this determination, Section 188(2)(a) through (e) specifically provides that courts should consider the place of contracting, the place of negotiation of the contract, the place of performance, the location of the subject matter of the contract, and the domicile, residence, nationality, place of incorporation, and place of business of the parties. Id.
 {¶ 13} In Ohayon, the supreme court also found that rights created by an insurance contract should also be determined "by the local law of the state which the parties understood was to be the principal locationof the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship * * * to the transaction and the parties." Ohayon at 479, quoting Restatement of Conflicts at 610, Section 193 (emphasis sic). "An insured risk, namely the object or activity which is the subject matter of the insurance, has its principal location * * * in the state where it will be during at least the major portion of the insurance period." Restatement at 611, Section 193, Comment b. The court noted how "[t]he principal location of the insured risk described in Section 193 neatly corresponds with one of Section 188's enumerated factors — thelocation of the subject matter of the contract." Ohayon at 480 (emphasis sic).
 {¶ 14} Applying Sections 188 and 193 of the Restatement, we conclude that Ohio law must be applied in this case. We recognize on one hand that there are contacts with Massachusetts and Georgia. Liberty is a Massachusetts company with its principal place of business in Massachusetts. UPSA is a Delaware corporation with its principal place of business in Georgia. The BA policy was negotiated in Massachusetts by Liberty and in Georgia by UPSA. The place of contracting is determined by the last act necessary for a contract to be binding. Restatement at 575, Section 188, Comment e. UPSA's acceptance of the policy which was the last act necessary to form the contractual relationship occurred in Georgia.
 {¶ 15} On the other hand, appellant resides in Ohio. UPS, the company she works for and which is a named insured under the BA policy, is an Ohio corporation. Although the BA policy was not delivered or issued for delivery in Ohio, R.C. 3937.18 nevertheless applies "to an automobile liability or motor vehicle liability insurance policy covering vehicles registered and principally garaged in Ohio[.]" Henderson v.Lincoln Natl. Specialty Ins. Co., 68 Ohio St.3d 303, 1994-Ohio-100. See, also, Vohsing v. Federal Ins. Co., Licking App. No. 2002 CA 00101, 2003-Ohio-2511 (finding that although Pennsylvania was the place of negotiating, contracting, underwriting, issuance and delivery of the policy, because vehicles were principally garaged in Ohio, Ohio law applied).
 {¶ 16} UPSA has a ground fleet of more than 150,000 vehicles. Although we have not found any evidence in the record as to exactly how many vehicles are registered and principally garaged in Ohio, it can be fairly implied that there are such vehicles, especially since UPS is an Ohio corporation. In addition, in its response to appellant's request for admissions, Liberty admitted that the BA policy provided coverage for vehicles registered and principally garaged in Ohio. Finally, both 1998 and 1999 UM/UIM rejection/selection forms specifically and exclusively refer to Ohio law. See Glover v. Smith, Hamilton App. Nos. C-020192 and C-020205, 2003-Ohio-1020 (inclusion of Ohio UM/UIM rejection/selection form in policy is clear evidence that the parties chose Ohio law to apply to those vehicles principally garaged in Ohio).
 {¶ 17} As previously noted, rights created by an insurance contract must be determined "by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy[.]" Ohayon, 91 Ohio St.3d at 479. Based upon the fact that appellant works for an Ohio corporation which is a named insured under the policy, Liberty's admission, and the inclusion of Ohio UM/UIM rejection/ selection forms in the policy, we find that the principal location of the insured risk during the term of the policy was Ohio. The trial court therefore did not err by basing its decision upon Ohio law.
 {¶ 18} We now turn to appellant's assignments of error. Appellant first argues that the trial court erred by finding that UPSA was a self-insurer in the practical sense as defined in the Ohio Supreme Court's decision in Grange. Liberty, in turn, argues that UPSA must be considered self-insured in the practical sense because the BA policy is merely a fronting agreement.
 {¶ 19} In determining whether an entity is self-insured, courts look at who bears the risk of loss. Dalton, 2002-Ohio-4015 at ¶ 35. "Self-insurance is not insurance; it is the antithesis of insurance."Physicians Ins. Co. of Ohio v. Grandview Hosp. Med. Ctr. (1988),44 Ohio App.3d 157, 158. "[W]hile insurance shifts the risk of loss from the insured to the insurer, self-insurance involves no risk-shifting."Jennings v. Dayton (1996), 114 Ohio App.3d 144, 148. Rather, "[s]elf-insurance `is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract.'" Physicians at 158.
 {¶ 20} R.C. 4509.45 sets forth the specific requirements for being a self-insurer in the motor vehicle context, and provides in relevant part that proof of financial responsibility may be given by filing a surety bond as provided in R.C. 4509.59 or a certificate of self-insurance as provided in R.C. 4509.72. See R.C. 4509.45(C), (E). There is no evidence in the record that UPSA holds a certificate of self-insurance pursuant to R.C. 4509.45(E) or that it is a surety bond principal pursuant to R.C. 4509.45(C).
 {¶ 21} In Grange, at the time one of its truck drivers was fatally injured by an uninsured motorist, Refiners met state financial responsibility requirements for its truck fleet through a financial responsibility bond coupled with excess insurance coverage, none of which contained UM coverage. Grange, the decedent's insurance company, filed a declaratory judgment against Refiners alleging that as a self-insurer, Refiners was obligated under R.C. 3937.18 to provide UM coverage for the protection of its drivers.
 {¶ 22} The supreme court framed the issue before it as "whether an employer, who meets Ohio's financial responsibility laws other than by purchasing a contract of liability insurance, must comply with the requirements" of R.C. 3937.18. Grange, 21 Ohio St.3d at 48. The supreme court found that although Refiners' efforts to meet his financial responsibility requirements by purchasing a financial responsibility surety bond and two excess insurance policies did not make it a self-insurer "in the legal sense contemplated by R.C. 4509.45(D) and4509.72, [such efforts made it a self-insurer] in the practical sense in that Refiners was ultimately responsible under the terms of its bond either to a claimant or the bonding company in the event the bond company paid any judgment claim." Id. at 49. In contrast to its narrow framing of the issue, the supreme court then broadly held that "[t]he uninsured motorist provisions of R.C. 3937.18 do not apply to either self-insurers or financial responsibility bond principals." Id. at syllabus.
 {¶ 23} A review of the issue of whether companies with fronting policies are to be deemed self-insured reveals a split of authority between Ohio courts. Grange did not involve a fronting policy with matching liability limits and deductible. Nevertheless, relying uponGrange, several courts subsequently held that employers subject to a fronting policy with matching liability limits and deductible qualified as self-insurers in the practical sense. Those courts reasoned that since the deductible of the fronting policies was exactly equal to the liability limits of the policies, the risk of loss never left the employers. See Lafferty v. Reliance Ins. Co. (S.D.Ohio 2000),109 F. Supp.2d 837; McCollum, Lucas App. No. L-92-141; and DeWalt v.State Farm Ins. Co. (Sept. 11, 1997), Lake C.P. No. 96CV001173.[4] In all those cases, the employers subject to the fronting policy were also all required to reimburse the insurance companies for payments made by the insurance companies under the policies.
 {¶ 24} Other courts, however, held that fronting policies with matching liability limits and deductible do not amount to self-insurance. Those courts declined to follow Lafferty and McCollum
because those cases had extended the holding in Grange in ways not contemplated by the Ohio Supreme Court. In particular, the Tenth Appellate District noted that a company cannot be allowed to fail to comply with the statutory requirements for invoking self-insured status, and at the same time seek to declare itself a self-insurer for purposes of avoiding the requirements of R.C. 3937.18. Dalton, 2002-Ohio-4015 at ¶ 76. See, also, Grubb v. Michigan Mut. Ins. Co., Montgomery App. No. 19575, 2003-Ohio-1558. Dalton and its progeny also reasoned that the ultimate risk of loss remained with the insurance company if the employer either refused or was financially unable to reimburse the insurance company for the loss. Dalton at ¶ 77; Stout v. Travelers PropertyCas. Ins. Co., Franklin App. No. 02AP-628, 2003-Ohio-1643; Gilchrist v.Gonsor, Cuyahoga App. No. 80944, 2003-Ohio-2297.
 {¶ 25} In Tucker v. Wilson, Clermont App. No. CA2002-01-002, 2002-Ohio-5142,[5] the policy issued to the employer by the insurance company contained a bankruptcy clause that provided that the bankruptcy or insolvency of the employer would not relieve the insurance company of its obligations under the policy. We found that because of the bankruptcy clause, the employer no longer retained 100 percent of the risk; rather, some risk had shifted to the insurance company. Id. at ¶ 14. As a result, we held that the employer was not a self-insurer in the practical sense and was not exempt from R.C. 3937.18. Accord, Gilchrist; Franklinv. American Manufacturers Mut. Ins. Co., Cuyahoga App. No. 81197, 2003-Ohio-1340. But see, contra, Adams, 2003-Ohio-1457; Musser v.Musser, Adams App. No. 02CA750, 2003-Ohio-1440.
 {¶ 26} In the case at bar, the trial court found that based upon the BA policy, the reinsurance agreement, and the irrevocable letter of credit, UPSA was a self-insurer in the practical sense and therefore exempt from R.C. 3937.18. Specifically, the court found that although "not set up in the same manner approved in Lafferty, DeWalt, andMcCollom [sic], [the BA policy] accomplishes the same thing. UPINSCO is wholly-owned by UPS[A]. UPINSCO has a reinsurance agreement with UPS[A] secured by an irrevocable letter of credit. UPS[A], through its wholly-owned subsidiary, retained a $5 million risk for liability. Liberty Mutual retained no risk. It simply satisfied Ohio's financial responsibility requirements and provided administrative services to UPS[A] through UPINSCO." For the reasons that follow, we find that the trial court's grant of summary judgment in favor of Liberty was premature.
 {¶ 27} At the outset, we note that in granting summary judgment to Liberty, the trial court relied heavily on Lafferty finding the facts of that case to be indistinguishable from the facts of this case. We disagree. Lafferty involved a fronting policy with matching liability limits and deductible. The employer was also required to reimburse the insurance company for any claims paid by the insurance company under the policy. In the case at bar, the BA policy has no deductible. Moreover, there is no indemnity agreement incorporated in the policy requiring UPSA to reimburse Liberty for any claims paid by Liberty under the policy.
 {¶ 28} The trial court also based its decision on the fact that "UPINSCO has a reinsurance agreement with UPS[A] secured by an irrevocable letter of credit." UPSA does not have a reinsurance agreement with UPINSCO. Rather, the reinsurance agreement secured by the letter of credit is solely between Liberty and UPINSCO. Nevertheless, because UPINSCO is wholly-owned by UPSA and because it reimburses Liberty for the claims paid by Liberty under the BA policy, the trial court found that UPSA was a self-insurer in the practical sense. Presumably, the trial court found that for purposes of R.C. 3937.18, UPSA and UPINSCO were one and the same.
 {¶ 29} Reinsurance may generally be defined as "a contract whereby one for a consideration agrees to indemnify another wholly or partially against loss or liability by reason of a risk the latter has assumed under a separate and distinct contract as insurer of a third party."Stickel v. Excess Ins. Co. of America (1939), 136 Ohio St. 49, 52. On appeal, Liberty refers to UPINSCO as a captive insurer. Such an insurer is "a corporation organized for the purpose of insuring the liabilities of its shareholders or their affiliates." Clougherty Packing Co. v. Commr.
(C.A.9, 1987), 811 F.2d 1297, 1298, fn. 1.
 {¶ 30} Notwithstanding Liberty's assertion, the only evidence in the record as to the relationship between UPSA and UPINSCO is that UPINSCO, a wholly-owned subsidiary of UPSA, is an insurance company in the business of insurance. UPINSCO would be a captive insurer if it had been incorporated by UPSA solely for the purpose of reinsuring UPSA through Liberty, and if UPINSCO engaged in no business other than the reinsuring of UPSA, that is, if UPINSCO, although an insurance company, did not provide insurance or reinsurance to unrelated third parties. See id.; Kidde Industries, Inc. v. United States (1997), 40 Fed.Cl. 42. If so, UPSA would retain 100 percent of the risk of loss, and therefore would be a self-insurer in the practical sense exempt from R.C. 3937.18.
 {¶ 31} We cannot conclusively find that UPSA is a self-insurer in the practical sense based upon its relationship with UPINSCO because the parties have not fully litigated this issue. For the purpose of reviewing the granting of summary judgment in favor of Liberty, we find that this is an issue best resolved by further proceedings below.[6] See Kiep v.Hamilton (May 19, 1997), Butler App. No. CA96-08-158. Appellant's first and second assignments of error are sustained.
 {¶ 32} In light of our holding regarding appellant's first two assignments of error, we find it unnecessary to reach the issues of whether (1) UPSA's rejection of UM/UIM coverage was invalid, (2) the trial court should have held that UM coverage arose by operation of law, and (3) the trial court improperly found that Linko did not apply. Appellant's third and fourth assignments of error are accordingly overruled as moot.
 {¶ 33} After having reviewed the record, we reverse the trial court's decision granting summary judgment in favor of Liberty and remand this case to the trial court for further proceedings.
Judgment reversed and remanded.
VALEN, P.J., and WALSH, J., concur.
[1] The version of R.C. 3937.18, which was then applicable, required insurers to offer UM/UIM coverage with every automobile liability or motor vehicle liability policy delivered or issued in Ohio. The named insured could only reject or accept both coverages offered pursuant to R.C. 3937.18. Failure to offer UM/UIM coverage resulted in the automatic extension of that coverage by operation of law. See Gyori v. JohnstonCoca-Cola Bottling Group, Inc., 76 Ohio St.3d 565, 1996-Ohio-358. R.C.3937.18 was amended by S.B. 97, effective October 31, 2001, to "eliminate any requirement of the mandatory offer of [UM] coverage, [UIM] coverage, or both [UM/UIM] coverages;" to "eliminate the possibility of [UM] coverage, [UIM] coverage, or both [UM/UIM] coverages being implied as a matter of law in any insurance policy;" to "eliminate any requirement of a written offer, selection, or rejection form for [UM] coverage, [UIM] coverage, or both [UM/UIM] coverages from any transaction in an insurance policy." See Dalton v. Wilson, Franklin App. No. 01AP-1014, 2002-Ohio-4015.
[2] A "fronting agreement" is an insurance term indicating that an entity is renting an insurance company's licensing and filing capabilities in a particular state or states. McCollum v. ContinentalIns. Co. (Apr. 9, 1993), Lucas App. No. L-92-141, 1993 WL 382455 at *3. A fronting agreement typically involves the purchase of a liability policy with a deductible in the same amount as the coverage.
[3] In Linko, the Ohio Supreme Court held that to "satisfy the offer requirement of R.C. 3937.18, the insurer must inform the insured of the availability of UM/UIM coverage, set forth the premium for UM/UIM coverage, include a brief description of the coverage, and expressly state the UM/UIM coverage limits in its offer[.]" Id. at 447-448. The supreme court further held that "[t]he four corners of the insurance agreement control in determining whether waiver was knowingly and expressly made by each of the named insureds[.]" Id. at 448.
[4] See, also, Adams v. Fink, Ross App. No. 02CA2660, 2003-Ohio-1457 (matching liability limits and deductible); and Fonseca v. Fetter (June 15, 2001), Lucas C.P. No. CI99-4712 (matching liability limits and deductible).
[5] Tucker was recently accepted for review by the Ohio Supreme Court.Tucker v. Wilson, 98 Ohio St.3d 1474, 2003-Ohio-708.
[6] Before addressing the issue of the relationship between UPSA and UPINSCO before the trial court, the parties would be wise to address which state law applies, Delaware law, Ohio law, U.S. Virgin Islands law, or Georgia law.