[Cite as *Bosley v. Associated Paper Stock, Inc.*, 2022-Ohio-2649.]

# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## MAHONING COUNTY

JOHN BOSLEY, SR.,

Plaintiff-Appellee,

v.

ASSOCIATED PAPER STOCK, INC. and THOMAS YANKO,

Defendants/Third-Party Plaintiffs-Appellees,

v.

WESTFIELD INSURANCE COMPANY and THE HARTFORD STEAM
BOILER INSPECTION AND INSURANCE CO.,

Third-Party Defendants-Appellants.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 21 MA 0012

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2019 CV 2425

**BEFORE:**
Cheryl L. Waite, Gene Donofrio, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed.
Judgment Entered in Favor of Appellants.

---

*Atty. Caryn M. Groedel*, Caryn Groedel & Associates Co., LPA, 31000 Woodall Drive, Cleveland, Ohio 44139, for John Bosley, Sr.

*Atty. Scott C. Essad*, 5500 Market Street, Suite 99, Youngstown, Ohio 44512, for Associated Paper Stock, Inc. and Thomas P. Yanko and

*Atty. Donald L. Best, Jr.*, DiBella, Geer, McAllister & Best, P.C., Law & Finance Building, 429 Fourth Avenue, Suite 200, Pittsburgh, Pennsylvania 15219, for Westfield Insurance Company and The Hartford Steam Boiler Inspection and Insurance Company.

Dated: June 30, 2022

---

**WAITE, J.**

{¶1} Appellants, Westfield Insurance Company ("Westfield") and The Hartford Steam Boiler Inspection and Insurance Company ("Hartford"), appeal from a Mahoning County Common Pleas Court decision to grant Appellees', Associated Paper Stock, Inc. ("APS") and Thomas Yanko ("Yanko"), motions for summary judgment and to overrule Appellants' motion for summary judgment. Based on the following, the judgment of the trial court is reversed and judgment is entered for Appellants.

Factual and Procedural History

{¶2} This appeal arises from age discrimination lawsuits filed by Plaintiff-Appellee, John Bosley, Sr. ("Bosley") against Defendants/Third Party Plaintiffs-Appellees, APS and Yanko. APS and Yanko sought coverage for Bosley's age discrimination claims under an "Employment Practices Liability Insurance Coverage Endorsement" ("EPL endorsement") that was part of a commercial general liability policy issued by Third Party Defendant-Appellant, Westfield. Hartford, a reinsurer for Westfield, was also named as a defendant in the action. Westfield denied coverage under the policy based on the determination that APS and Yanko failed to report Bosley's claim by the cut-off date set forth in the policy.

Case No. 21 MA 0012

**{¶3}** APS, Yanko, Westfield, and Hartford filed a stipulation of facts with the trial court in support of their motions for summary judgment. The stipulation included various documents as exhibits pertaining to the EPL endorsement. Therefore, this record reveals that the parties agree on all of the relevant facts in this matter.

**{¶4}** According to the stipulation of facts, Yanko is the owner and President of APS. Bosley was employed as a commercial truck driver for APS from July of 1985 through May 17, 2018, when he was laid off. On October 26, 2018, Bosley filed an age discrimination action against APS in Mahoning County Common Pleas Court, case no. 2018-CV-2653 (the "First Lawsuit"). Bosley alleged claims for age discrimination, violation of the Ohio Equal Pay Act, and wrongful termination in violation of public policy. While not a named party to this suit, the complaint listed Yanko as the statutory agent for service of process on APS. Yanko, as agent, was served with the summons and complaint on November 6, 2018. APS filed an answer to the complaint on December 27, 2018. Bosley voluntarily dismissed the First Lawsuit on September 13, 2019. He then refiled his action on November 26, 2019 in case no. 2019-CV-2425 ("the Refiled Lawsuit"). The Refiled Lawsuit was identical in every respect to the complaint filed in the First Lawsuit, alleging age discrimination, violation of the Ohio Equal Pay Act, and wrongful termination in violation of public policy. Service was obtained on Yanko, as statutory agent, on January 27, 2020.

**{¶5}** On March 13, 2020, Bosley filed an amended complaint, now adding Yanko as a party defendant. Other than the addition of Yanko as a party, the amended complaint was identical to the first two complaints filed. Yanko was served with a summons and the amended complaint by certified mail on March 20, 2020.

**{¶6}** The facts set forth in the First Lawsuit, as well as in the complaint and amended complaint in the Refiled Lawsuit, all allege that Bosley reported directly to Yanko. (3/13/2020 Plaintiff's Amended Complaint, ¶ 3). Bosley reported a suspected violation of Department of Transportation ("DOT") regulations directly to Yanko, which included allegations that APS personnel were throwing away the driver's logs Bosley submitted as required by DOT if Bosley traveled more than 100 miles in a day. Bosley continued to submit the logs after being told not to by Yanko, after which Yanko "yelled at [Bosley]" for submitting these logs. (3/13/2020 Plaintiff's Amended Complaint, ¶ 18, 18-21). Shortly thereafter, Bosley was told by Yanko that he was being laid off for lack of work. (3/13/2020 Plaintiff's Amended Complaint, ¶ 22).

**{¶7}** Westfield had issued a commercial general liability insurance policy containing the EPL endorsement with the effective dates of April 16, 2018 to April 16, 2019. The policy renewed with the same limits, deductible, terms, and conditions as the previous policy with the effective dates of April 16, 2019 to April 16, 2020. The parties agree that the claims raised by Bosley would not ordinarily trigger coverage under the commercial general liability policy. However, the EPL is an endorsement that modifies the commercial general liability policy to provide coverage for "wrongful employment acts." (9/30/20 Stipulation of Facts, ¶ 30.) The EPL endorsement is a "claims-made and reported" coverage endorsement and is not occurrence based. This means that for coverage to apply, a "claim" or "suit" for a "wrongful employment act" made against the insured during the "EPL coverage period" must be reported to Westfield during the "EPL coverage period" or within thirty (30) days after the end of the "EPL coverage period." (9/30/20 Stipulation of Facts, ¶ 32.) Again, the initial EPL coverage period was April 16,

2018 to April 16, 2019 and was subsequently renewed for the coverage period of April 16, 2019 to April 16, 2020.  The EPL endorsement also included a definition of the word "claim," and broadly defines a "claim":

> "Claim" means a written demand for monetary and non-monetary relief (including any request to toll or waive any statute of limitations).  The term "claim" shall also mean an Equal Employment Opportunity Commission (EEOC), Department of Labor (DOL) or Office of Federal Contract Compliance Program (OFCCP) (or similar federal, state or local agency) proceeding or investigation commenced by the filing of a notice of charges, service of a complaint or similar document of which notice has been given to "you".

(9/30/20 Stipulation of Facts, ¶ 34.)  The parties agree that Bosley's allegations regarding age discrimination are included under the definition of "Wrongful Employment Acts" under the EPL endorsement.

{¶8}    The EPL endorsement also provides: "[a]ll 'claims' and 'suits' arising from the same or 'related wrongful employment acts' shall be treated as arising out of a single 'wrongful employment act' " and that "[a]ll 'claims' and 'suits' arising out of one 'wrongful employment act' shall be deemed to be made on the date that the first such 'claim' is made or 'suit' is brought[.]"  (9/30/20 Stipulation of Facts, ¶ 35, 36.)  Finally, the EPL defines "related wrongful employment acts" as:

> "Related Wrongful Employment Act(s)" means "wrongful employment acts" which are the same, related or continuous…or which arise from a common

Case No. 21 MA 0012

nucleus of facts. "Claims" or "suits" can allege "related wrongful employment acts," regardless of whether such "claims" or "suits" involve the same or different claimants, "insureds" or legal causes of action.

(9/30/20 Stipulation of Facts, ¶ 37.)

**{¶9}** According to the parties' stipulations, Bosley's allegations were first presented to APS and Yanko on November 6, 2018, with the service of Bosley's complaint in the First Lawsuit being made on Yanko, as statutory agent for APS. (9/30/20 Stipulation of Facts, ¶ 38.) The parties also stipulate that the allegations Bosley set forth in the First Lawsuit were not reported to Westfield until August 21, 2019. This was nine months after initially being served with the First Lawsuit and four months after the end of the EPL endorsement coverage period for the policy running from April 16, 2018 to April 16, 2019.

**{¶10}** Bosley voluntarily dismissed the First Lawsuit pursuant to Civ.R. 41(A) and filed his Refiled Lawsuit on November 26, 2019. APS was served with the Refiled Lawsuit on January 27, 2020 and reported the claim to Westfield the following day, January 28, 2020. (9/30/20 Stipulation of Facts, ¶ 44.) Bosley filed his amended complaint including Yanko as a named defendant on March 13, 2020 and Yanko was served by certified mail on March 20, 2020. (9/30/20 Stipulation of Facts, ¶ 45-46.) The parties stipulate that Yanko, as an executive officer, is an insured under the EPL endorsement. Yanko and APS reported Bosley's filing of an amended complaint in the Refiled Lawsuit on April 6, 2020. Westfield denied coverage for defense or indemnification on April 21, 2020. (9/30/20 Stipulation of Facts, ¶ 50.)

**{¶11}** APS filed a third-party action against Westfield and Hartford, disputing the denial of coverage. The third-party complaint raised causes of action for breach of

contract, declaratory judgment, and bad faith. In response, Westfield and Hartford filed an answer denying liability and a counterclaim requesting a declaratory judgment that Westfield does not owe coverage to APS or Yanko for Bosley's lawsuit. APS and Yanko filed separate answers to the counterclaim. Yanko also filed a cross-claim asserting breach of contract and bad faith and seeking a declaratory judgment. Westfield and Hartford filed an answer to the cross-claim denying liability. Westfield, Hartford, APS, and Yanko filed cross-motions for summary judgment on the coverage issue. In addition, Westfield and Hartford sought summary judgment on the bad faith claims of APS and Yanko and Hartford requested summary judgment on all claims.

{¶12} On December 9, 2020, the trial court filed a judgment entry. It granted summary judgment for APS on the coverage issue and overruled the motion for summary judgment filed by Westfield on that issue. In addition, the trial court overruled the motions for summary judgment of Westfield and Hartford on the bad faith claims of APS and Yanko, concluding that genuine issues of material fact remained for trial.

{¶13} On December 23, 2020, Westfield and Hartford filed a motion to amend or correct the judgment *nunc pro tunc*, asking the trial court to enter an order declaring the rights and obligations of the parties, and to amend its judgment entry by making the express finding under Civ.R. 54(B) that its judgment entry was final and appealable. On January 26, 2021, the trial court granted the motion in part, amending the December 9, 2020 judgment entry to include the finding that Westfield "is required to provide a defense and indemnification to [APS] and Yanko. Both [APS's] Third Party Complaint and Yanko's Crossclaim seeking a defense and indemnification are sustained." (1/26/21 J.E.) The

trial court also found that its judgment was final and appealable and there was no just reason for delay.

**{¶14}** Appellants filed this timely appeal.

Standard of Review

**{¶15}** This appeal is from a trial court judgment resolving opposing motions for summary judgment. An appellate court conducts a *de novo* review of a trial court's decision to grant summary judgment, using the same standards as the trial court set forth in Civ.R. 56(C). *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Before summary judgment can be granted, the trial court must determine that: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing the evidence in favor of the party against whom the motion for summary judgment is made, the conclusion is adverse to that party. *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). Whether a fact is "material" depends on the substantive law of the claim being litigated. *Hoyt, Inc. v. Gordon & Assoc., Inc.*, 104 Ohio App.3d 598, 603, 662 N.E.2d 1088 (8th Dist.1995).

**{¶16}** "[T]he moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim." (Emphasis deleted.) *Dresher v. Burt*, 75 Ohio St.3d 280, 296, 662 N.E.2d 264 (1996). If the moving party carries its burden, the nonmoving party has a reciprocal burden of setting forth specific facts showing that there is a genuine issue for trial. *Id.* at

293. In other words, when presented with a properly supported motion for summary judgment, the nonmoving party must produce some evidence to suggest that a reasonable factfinder could rule in that party's favor. *Brewer v. Cleveland Bd. of Edn.,* 122 Ohio App.3d 378, 386, 701 N.E.2d 1023 (8th Dist.1997).

{¶17} The evidentiary materials to support a motion for summary judgment are listed in Civ.R. 56(C) and include the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact that have been filed in the case. In resolving the motion, the court views the evidence in a light most favorable to the nonmoving party. *Temple*, 50 Ohio St.2d at 327, 364 N.E.2d 267.

## ASSIGNMENT OF ERROR NO. 1

THE TRIAL COURT ERRED IN NOT DETERMINING THAT THE EMPLOYMENT PRACTICES LIABILITY ENDORSEMENT OF THE INSURANCE POLICY ISSUED BY WESTFIELD INSURANCE COMPANY WAS A CLAIMS MADE AND REPORTED POLICY FOR WHICH A SHOWING OF PREJUDICE WAS NOT REQUIRED.

## ASSIGNMENT OF ERROR NO. 2

THE TRIAL COURT ERRED IN DETERMINING THAT WESTFIELD INSURANCE COMPANY WAS REQUIRED TO SHOW IT WAS PREJUDICED BY THE LATE CLAIM NOTICE BY ASSOCIATED PAPER STOCK, INC. AND THOMAS YANKO.

ASSIGNMENT OF ERROR NO. 3

THE TRIAL COURT ERRED IN DETERMINING THAT WESTFIELD INSURANCE COMPANY IS REQUIRED TO PROVIDE A DEFENSE AND INDEMNIFICATION TO ASSOCIATED PAPER STOCK, INC. AND THOMAS YANKO FOR THE CLAIM OF JOHN BOSLEY, SR.

**{¶18}** In Appellants' first three assignments of error, they challenge the trial court's decision to grant APS and Yanko's motions for summary judgment and concluding they were entitled to coverage under the policy. Although not in accordance with the appellate rules, Appellants set forth one argument for all three assignments. For the sake of clarity and because the assignments are so similar in nature, the first three assignments will be addressed together.

**{¶19}** First, it is important to note that there are two underlying lawsuits and two EPL endorsement policies. The allegations in both lawsuits are identical and the notice provisions in both EPL policies are identical. The key factors are, first, that in the First Lawsuit Yanko was not named as a defendant. Yanko was not added as a party defendant and was not served as such in the underlying matter until the Refiled Lawsuit was amended on March 13, 2020. Second, the First Lawsuit was voluntarily dismissed pursuant to Civ.R. 41(A). Despite the dismissal of the First Lawsuit, Appellants' timeline incorporates both lawsuits and both EPL policies. Appellants allege that the language of the EPL is unambiguous and that APS and Yanko were required to provide notice to Westfield immediately upon being served with the First Lawsuit. Third, APS and Yanko contend that although notice was not given by APS until nine months after APS was

served with the First Lawsuit, the dismissal of that lawsuit requires that the parties operate, by law, as though those claims never existed and that both parties gave timely notice of the Refiled Lawsuit, first APS, and then Yanko once he was named in the amended complaint.

**{¶20}** "[I]n general, when a trial court unconditionally dismisses a case or a case has been voluntarily dismissed under Civ.R. 41(A)(1), the trial court patently and unambiguously lacks jurisdiction to proceed[.]" *State ex rel. Hummer v. Sadler,* 96 Ohio St.3d 84, 2002-Ohio-3605, 771 N.E.2d 853, ¶ 22. "A dismissal without prejudice leaves the parties as if no action had been brought at all." *DeVille Photography, Inc. v. Bowers,* 169 Ohio St. 267, 272, 159 N.E.2d 443 (1959).

**{¶21}** In its judgment entry granting summary judgment, the trial court concluded:

Prompt notice provisions of insurance policies are enforceable in order to permit the insurer to determine whether the allegations state a claim and whether there is coverage. Giving proper notice allows the insurer to protect its own interests and properly and timely investigate the claims alleged.

Associated maintains that it failed to notify Westfield of a prior case not the case at bar. It further argues that coverage is owed to the insured even under the scenario of late notice because the insurer has failed to show it was prejudiced as a result of the delay. See: *Quail Energy Corp. v. Green Westfield Ins. Co.*, 2015 Ohio Misc. Lexis 13447.

Case No. 21 MA 0012

The Court finds that under the facts of this case as stipulated, Westfield's notice of the claim in case No. 2019 CV 2425 has not deprived it of a meaningful opportunity to investigate and protect its own interests.

(12/9/20 J.E.)

{¶22} Thus, the trial court determined that Appellants were not prejudiced by the late notice given by Appellees. Appellants assert in their first assignment of error that the trial court erred in failing to recognize and consider that the EPL endorsement was contained in a "claims made and reported policy." According to Appellants, there is a distinction under Ohio law between a "claims made and reported" policy and an "occurrence" policy. They argue that, under Ohio law, contrary to the law and customs regarding an occurrence policy, there is no requirement that an insurer demonstrate that they were prejudiced by late notice of a claim from an insured under a claims made and reported policy (the notice-prejudice rule), particularly if the policy sets forth a date certain by which notice must be given.

{¶23} Appellees respond that in Ohio there is no distinction between a claims made and reported policy and an occurrence based policy. Late notice will only amount to a breach of the insurance contract when it is prejudicial to the insurer. *Ferrando v. Auto-Owners Mut. Ins. Co.,* 98 Ohio St.3d 186, 2002-Ohio-7217, 781 N.E.2d 927.

{¶24} The parties do not dispute that the EPL endorsement is contained in a claims made and reported policy. In fact, according to the parties' stipulations, the title heading on the first page of the EPL endorsement states in all capital letters, "THIS IS A CLAIMS-MADE AND REPORTED COVERAGE ENDORSEMENT." (9/30/20 Stipulation of Facts, ¶ 27.) Therefore, the language of the policy unambiguously states that it is a

claims made and reported policy and not an occurrence based policy. Appellants' contention that the trial court erred in failing to recognize that the EPL endorsement was contained in a claims made and reported policy is not borne out by the record, as the trial court noted in its judgment entry that, "[t]he parties have submitted a stipulation of facts that the Court has adopted as true." (12/9/20 J.E.) As the parties stipulated that the endorsement was contained in a claims made and reported policy and the trial court adopted that stipulation, the trial court did not need to make a specific finding regarding this issue, as it was not a fact in dispute between the parties. However, although it was not required to specifically state the EPL endorsement was contained in a claims-made policy, the trial court was required to conduct the appropriate analysis to determine what coverage was provided under a claims-made policy pursuant to Ohio law. Such an analysis is specifically lacking and is determinative in this case, as discussed below.

**{¶25}** In its second assignment of error, Appellants contend the trial court erred in determining that Appellants were required to show they were prejudiced by a late notice of claim when the parties stipulated that the EPL was part of a claims-made policy. Citing *United States v. A.C. Strip,* 868 F.2d 181 (6th Cir.1989), Appellants argue that there is an important distinction between a claims-made policy and an occurrence based policy in determining whether the notice-prejudice rule applies. Appellants argue that, under Ohio law, claims-made policies do not require the insurer to demonstrate it was prejudiced by the late notice given.

**{¶26}** The trial court concluded in its judgment entry that, "Westfield's notice of the claim in case No. 2019 CV 2425 has not deprived it of a meaningful opportunity to investigate and protect its own interests." (12/9/20 J.E.) Hence, the court clearly applied

Case No. 21 MA 0012

the notice-prejudice rule. In so doing, however, the trial court ignored the effect of the language in the parties' policy and EPL endorsement.

**{¶27}** A claims-made policy is intended to cover losses that are asserted during the policy period, regardless of when the events underlying the "claim" may have occurred. *Id.* "A claims made policy provides coverage for claims brought against the insured only during the life of the policy. An occurrence policy provides coverage for acts done during the policy period regardless of when the claim is brought." *Id.* at 185. A claims-made policy limits liability to a fixed duration of time only. *A.C. Strip,* at 187. To allow for coverage beyond that fixed time period would operate to provide an insured more coverage than specifically allowed for and agreed to in the policy that the insured obtained. *Id.* A cut-off date is integral to a claims-made policy, as it is directly related to the premium rate of a policy. *Garrison Southfield Park, L.L.C. v. Aspen Specialty Ins. Co.,* 10th Dist. No. 21AP-21, 2022-Ohio-709, ¶ 29. Moreover, "[i]t is axiomatic that an insurance company is under no obligation to its insured, or to others harmed by the actions of the insured, unless the conduct alleged of the insured falls within the coverage of the policy." *Gearing v. Nationwide Ins. Co.,* 76 Ohio St.3d 34, 36, 665 N.E.2d 1115 (1996).

**{¶28}** In *Ferrando*, on which Appellees rely, the Ohio Supreme Court implemented the notice-prejudice rule with regard to an insured giving notice to an insurer of a pending claim. The *Ferrando* Court determined that prompt notice provisions in an insurance policy can be valid, but "the failure of notice will serve as a material breach of the insurance contract only when the unreasonable notice is prejudicial to the insurer." *Id.* at ¶ 30. Thus, if notice is unreasonable but the insurer suffers no prejudice, the breach is

not material and coverage remains in effect. *Id.* However, it is abundantly clear that the language in the policy in *Ferrando* merely stated that the insured was to provide "prompt notice" of any "accident," "claim," "suit," or "loss." This language is significantly less specific than in the endorsement at bar, which required that notice of any "claim," as broadly defined, must be made within the policy period or no later than 30 days thereafter. Additionally, the policy language at issue requires that any "claims" raised from a single allegedly wrongful action are "deemed to be made on the date that the first 'claim' is made." Hence, this policy tells an insured that the insurer requires notice within a specific period of any and all acts alleged against it where a third party has made any kind of "written demand for monetary and non-monetary relief," and when it first becomes aware of the demand, no matter how many subsequent "claims" are made. *Ferrando* is clearly distinguishable on the basis of the language of the policies and the specificity with which an insured is notified of its obligations. This specificity is only one hallmark in distinguishing a claims-made versus occurrence based policy.

{¶29} Appellees contend that the notice-prejudice rule applies regardless of whether the policy is a claims-made policy or an occurrence policy. However, federal courts applying Ohio law have held that the notice-prejudice rule in *Ferrando* is inapplicable in cases where the policy provides that notice of a "claim" must be given to the insurer by a certain date. *See McCarty v. Natl. Union Fire Ins. Co. of Pittsburgh, PA.,* 699 Fed.Appx. 464 (6th Cir.2017); *Wendy's Intern., Inc. v. Illinois Union Insur. Co.,* S.D.Ohio No. 2:05-cv-803, 2007 WL 710242, at *9; *Certain Underwriters at Lloyds of London v. Jeff Wyler Dealer Group, Inc.,* S.D.Ohio No. C-1-05-572, 2007 WL 1989836, *8 (July 9, 2007).

Case No. 21 MA 0012

{¶30} In *McCarty,* the United States Court of Appeals for the Sixth Circuit, applying Ohio law, rejected an argument that the notice-prejudice rule applied to malpractice insurance which was contained in a claims-made policy. This policy required any "claim" to be "promptly reported" to the insurer, but no later than 60 days after the end of the policy period. *McCarty* at 468. The plaintiffs in *McCarty* did argue that the insurer would not be prejudiced by the late notice. The Sixth Circuit noted, "[b]ecause coverage in a claims-made policy is generally restricted to only claims made and reported during the policy period, an insurer need not demonstrate prejudice to deny a claim that is made outside the policy period." *Id.* citing *A.C. Strip* at 187.

{¶31} In *Wendy's*, the United States District Court for the Southern District of Ohio determined that the notice-prejudice rule did not apply to a policy where notice was required to be given "immediately, but in no event later than 60 days after the end of the Policy Period of any Claim made against the Insured." *Wendy's* at *3. The court distinguished *Ferrando*, concluding that the policy in *Ferrando* did not require the insured to notify the insurer of any claim by a specific date, but merely stated that notice should be given "promptly." *Wendy's* at *8.

{¶32} In *Certain Underwriters at Lloyds of London,* another United States District Court for the Southern District of Ohio case applying Ohio law, the Court determined that "[a]bsent any contrary caselaw supporting the proposition that the notice-prejudice standard enunciated in *Ferrando* applies when a specific notice deadline is imposed under a policy or indicating that the Ohio Supreme Court would extend the notice-prejudice standard in this manner, the Court declines to extend *Ferrando* to the facts of this case." *Certain Underwriters at Lloyds of London* at *7.

{¶33} The notice provision in the instant matter is unambiguous and clear. Notice of any "claim" made against the insured is required to be given to the insurer during the defined policy period or within thirty days after the expiration of the policy period. Thus, there is a date certain when the insured is to provide notice. This is the provision agreed to by the parties when Appellees obtained this claims-made policy and, in accordance with the Tenth District and the federal courts applying Ohio law, Appellants were not required to demonstrate that they were prejudiced by Appellees' late notice.

{¶34} In their third assignment of error, Appellants contend the trial court erred in determining that Westfield was required to provide a defense and indemnification under the terms of the EPL endorsement for Bosley's claims.

{¶35} The parties stipulated the notice provision contained in the EPL endorsement requires Appellees to "give written or oral notice to [Westfield] as soon as practicable and either: * * * anytime during the 'EPL coverage period' * * * or within thirty (30) days after the end of the 'EPL coverage period.' " (9/30/20 Stipulation of Facts, ¶ 32.) The coverage period for the first EPL is April 1, 2018 to April 1, 2019. The second EPL coverage period was from April 16, 2019 to April 16, 2020. The First Lawsuit was filed on October 26, 2018. Therefore, Appellees were required to given notice of any "claim" to Westfield as soon as practicable anytime during the EPL coverage period or within 30 days after the EPL expired. Again, the definition of "claim" is broadly written, and certainly includes any lawsuit that may be filed. Additionally, the policy requires that notice be given at the first instance the insured becomes aware a "claim" is being made no matter how many other "claims" may arise from the same facts at some later date. Here, the notice provision was triggered and the clock began ticking when Bosley's complaint was

filed in the First Lawsuit on October 26, 2018 and ended on a date certain, May 1, 2019 (thirty days after the EPL endorsement coverage period). Appellee APS gave Westfield notice of Bosley's claims on August 21, 2019, nearly four months after the time period mandated by the policy ended.

**{¶36}** Appellees concede the notice provided by APS of the First Lawsuit was not timely, but argue: (1) the subsequent dismissal of the First Lawsuit operated to void the allegations asserted in this complaint as though they did not exist, and (2) even if the allegations did not extinguish pursuant to *Quail,* Appellants were required to show they were prejudiced by the late notice and failed to make this showing.

**{¶37}** In addition, Appellee Yanko asserts that since he was not named as a party defendant in the action until the Refiled Lawsuit was amended on March 13, 2020, the notice provision applicable to him as an individual officer of APS did not expire until May 16, 2020 (thirty days after the expiration of the second EPL endorsement coverage period.) Thus, Yanko contends that his notice of the claim against him that was given to Westfield on April 6, 2020, was timely under the EPL notice provision.

**{¶38}** It is apparent from the record and the stipulation of facts that Appellee APS did not give timely notice under the notice provision of the EPL endorsement. It is equally apparent that under this claims-made policy which contains a date certain for when notice is to be given to the insurer, the notice-prejudice standard does not apply under Ohio law. Therefore, the trial court erred in granting summary judgment to Appellees on the basis that Appellants had "not deprived it of a meaningful opportunity to investigate and protect its own interests." (12/9/20 J.E.) The trial court improperly applied the notice-prejudice rule which is inapplicable to claims-made policies with a date certain notice requirement.

**{¶39}** Regarding Appellee Yanko, the record contains three nearly identical complaints: the complaint filed in the First Lawsuit, and the complaint and amended complaint filed in the Refiled Lawsuit. Yanko, as statutory agent, was served with the initial "claims" made by Bosley in 2018. Although not named as a party defendant until the complaint in the Refiled Lawsuit was amended, the initial complaint is replete with references to Yanko, individually, as the alleged bad actor in Bosley's age discrimination action. The complaints all state that Yanko was Bosley's direct supervisor during the entire tenure of his employment at APS. (3/13/20 Plaintiff's Amended Complaint, ¶ 3.) Further, Bosley alleges he directly informed Yanko as to APS's violations of DOT regulations and that "Yanko yelled at [Bosley]" for continuing to submit driver's logs. (3/13/20 Plaintiff's Amended Complaint, ¶ 21.) Finally, Bosley alleged that Yanko personally notified Bosley that he was being laid off. (3/13/20 Plaintiff's Amended Complaint, ¶ 22.) Under the unambiguous terms of the EPL endorsement, Appellees were required to notify Appellants of Bosley's "claims" when they were first raised to Appellees, as they agree the insurance contract provides that notice must be given: "If, during the 'EPL coverage period', incidents or events occur which 'you' reasonably believe may give rise to a 'claim' or 'suit' for which coverage may be provided hereunder[.]" (EPL Endorsement at p. 5.) Even the most casual reading of the original complaint filed in October of 2018 would have given Yanko a reasonable belief that Bosley was raising a "claim" against him, individually. No other individual employee or officer of APS is mentioned, other than Yanko, in any of the three complaints. All of the allegations in the amended complaint are identical to those raised in the First Lawsuit that was served on Yanko as the statutory agent of the business. Because the First Lawsuit clearly

contained "claims" raised against Yanko as defined in the EPL endorsement, Appellee Yanko was required to provide notice to Appellants within the same time requirement imposed by contract on APS. The record shows the Appellees were notified, in writing, of Bosley's claims against them at the time they were served with the First Lawsuit. While dismissal of that lawsuit operated procedurally to make the suit a nullity pursuant to Ohio's rules, it in no way affected the language of the EPL endorsement. That language clearly required Appellees to notify Appellants of the First Lawsuit at the time it was filed because it contained the first written notice to Appellees of claims made against them by Bosley. Because neither Appellee gave timely notice of these claims under the EPL endorsement, the trial court erred in granting summary judgment in favor of Appellees and in determining that Appellants were required to provide a defense and indemnification to Appellees.

**{¶40}** Appellants' first, second and third assignments of error have merit and are sustained.

<u>ASSIGNMENT OF ERROR NO. 4</u>

THE TRIAL COURT ERRED IN FAILING TO DISMISS THE CLAIMS OF BAD FAITH AS A MATTER OF LAW.

**{¶41}** In the fourth assignment of error, Appellants argue the trial court failed to dismiss Appellees' bad faith claims. APS asserted a claim of bad faith in a third party complaint. Yanko raised these claims in his cross-claim against Appellants. The trial court concluded that "Westfield's and Hartford's Motions for Summary Judgment regarding bad faith claims are overruled as genuine issues of material fact remain." (12/9/20 J.E.)

<u>Case No. 21 MA 0012</u>

**{¶42}** Appellants argue that they were not obligated to provide coverage to Appellees because of their failure to timely provide notice. Hence, there can be no liability for bad faith. Appellants argue in the alternative that, even if we determine that Appellees are entitled to coverage under the EPL endorsement, Appellees' bad faith claims should be dismissed because their decision was reasonable under the language of the contract. Appellees did not respond to Appellants' motion for summary judgment on this issue.

**{¶43}** Summary judgment can be granted only where there remains no genuine issue of material fact for trial and where, after construing the evidence most strongly in favor of the nonmovant, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing Civ.R. 56(C). The burden of showing there is no genuine issue of material fact initially lies with the party who files the summary judgment motion. *Id.,* citing *Dresher v. Burt,* 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996).

**{¶44}** Thereafter, the nonmovant may not rest on mere allegations or denials of the party's pleadings but must respond by setting forth specific facts that show that there is a genuine issue of fact for trial. *Id.,* citing Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Civ.R. 56(E). Although courts are cautioned to construe the evidence presented in favor of the nonmoving party, summary judgment is not to be discouraged where a nonmovant fails to respond with evidence supporting the essentials of his claim. *Leibreich v. A.J. Refrigeration, Inc.,* 67 Ohio St.3d 266, 269, 617 N.E.2d 1068 (1993).

**{¶45}** Appellees did not provide arguments in opposition to Appellants' summary judgment motion on the claims of bad faith in this matter and cannot simply rest on the

allegations presented in their pleadings. The nonmovant must respond and present evidentiary materials or cite to the evidence already in the record. While Appellees in this case each filed summary judgment motions and opposed some of Appellants' claims, they addressed only the issue of coverage under the EPL endorsement.

{¶46} "[A]n insurer has the duty to act in good faith in the handling and payment of the claims of its insured." *Hoskins v. Aetna Life Ins. Co.,* 6 Ohio St.3d 272, 452 N.E.2d 1315 (1983), paragraph one of the syllabus. Where an insurer refuses to pay a claim without providing reasonable justification, the insurer fails to act in good faith. *Zoppo v. Homestead Ins. Co.,* 71 Ohio St.3d 552, 644 N.E.2d 397 (1994), paragraph one of the syllabus. A failure to act in good faith gives rise to a claim against the insurer. *Hoskins,* at paragraph one of the syllabus.

{¶47} In their pleadings, APS and Yanko alleged that despite numerous attempts, Appellants failed to negotiate coverage in good faith. Without any additional evidentiary support or without citing to evidence in the record, which does not appear to exist, there is no genuine issue of material fact regarding whether Appellants acted in bad faith. The mere allegations in Appellees' pleadings do not amount to evidence of bad faith. In any event, as we have concluded that Appellees failed to provide timely notice as required under the terms of the EPL endorsement, there is no viable basis for their related bad faith claims against Appellants.

{¶48} Appellants' fourth assignment of error has merit and is sustained.

ASSIGNMENT OF ERROR NO. 5

THE TRIAL COURT ERRED IN NOT GRANTING SUMMARY JUDGMENT
FOR THE HARTFORD STEAM BOILER INSPECTION AND INSURANCE

Case No. 21 MA 0012

COMPANY BECAUSE THERE IS NO CONTRACT BETWEEN IT AND ASSOCIATED PAPER STOCK, INC. AND THOMAS YANKO.

**{¶49}** In its fifth assignment of error, Appellants argue the trial court erred in failing to grant summary judgment in favor of Hartford, as it had no contractual relationship with Appellees. The third-party complaint filed by APS alleges that Hartford "is an insurance company that either insures, underwrites, or acts as some sort of agent or partner" with Westfield. (Third-Party Complaint, ¶ 3.)

**{¶50}** In their motion for summary judgment, Appellants argued that Hartford served as a reinsurer to Westfield for the coverage afforded under the EPL endorsement. Appellants argue that a reinsurance contract is separate from the contract between the insured. As such, the reinsurer cannot be held directly liable to the insureds. *Int'l Surplus Lines Ins. Co. v. Certain Underwriters & Underwriting Syndicates at Lloyd's of London*, 868 F.Supp. 923, 928 (S.D. Ohio 1994). Since there is no direct contractual relationship between Hartford and Appellees, the claims for breach of contract, declaratory judgment, and bad faith against Hartford should have been dismissed.

**{¶51}** Again, after Hartford filed its motion for summary judgment seeking to be dismissed from the action for failing to have a contractual relationship with Appellees, the burden was on APS and Yanko to introduce additional evidence or cite evidence already in the record demonstrating that a genuine issue of material fact existed regarding their alleged contractual relationship with Hartford. Appellees did not address this issue in their motion in opposition to summary judgment in any fashion.

**{¶52}** In its judgment entry, the trial court did not address this issue directly. It merely concluded that genuine issues of fact remained regarding the bad faith claim against both Westfield and Hartford.

**{¶53}** A review of this record reflects that, beyond the mere allegations in the pleadings, there is no evidence in support of any contractual relationship which may exist between Appellees and Hartford. In fact, it is clear even from the pleadings that Appellees did not have a contractual relationship with Hartford.

**{¶54}** This record shows that no genuine issues of fact remain regarding the absence of a contractual relationship between Hartford and Appellees. Therefore, Appellants' fifth assignment of error has merit and is sustained.

**{¶55}** Based on the foregoing, the judgment of the trial court is reversed and judgment is hereby entered in favor of the Appellants.

Donofrio, P.J., concurs.

Robb, J., concurs.

[Cite as *Bosley v. Associated Paper Stock, Inc.*, 2022-Ohio-2649.]

---

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed. Judgment is hereby entered in favor of Appellants. Costs to be taxed against the Appellees.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**